374 So.2d 582 (1979)
STATE of Florida, DEPARTMENT OF NATURAL RESOURCES, and the Trustees of the Internal Improvement Trust Fund, Appellants,
v.
GABLES-BY-THE-SEA, INC., a Florida Corporation, Appellee.
No. 79-61.
District Court of Appeal of Florida, Third District.
August 7, 1979.
Rehearing Denied September 10, 1979.
*583 Jim Smith, Atty. Gen., and Martin S. Friedman, Asst. Atty. Gen., Tallahassee, for appellants.
John R. Farrell, Miami, Sibley, Giblin, Levenson & Glaser, Miami Beach, for appellee.
Before HENDRY, KEHOE and SCHWARTZ, JJ.
KEHOE, Judge.
Appellants, petitioners below, bring this appeal from a supplemental final judgment awarding attorneys' fees to appellee, respondent below, in an inverse condemnation proceeding. We affirm in part and reverse in part.
The lengthy and complex history of this case, until April, 1977, when the eminent domain action was filed by the State, is substantially set forth in Askew v. Gables-by-the-Sea, Inc., 333 So.2d 56 (Fla. 1st DCA 1976), cert. denied, 345 So.2d 420 (Fla. 1977). Eminent domain proceedings were initiated in the Circuit Court of Dade County. After a trial, the jury returned a verdict in the amount of $3,350,000.00. Pursuant to appellee's motion for a judgment notwithstanding the verdict, the trial court awarded appellee $5,000,000.00 plus interest. The total amount of full compensation ultimately paid by the State to appellee was $5,537,308.22. An appeal was filed by the State, but a settlement was reached, the appeal was dismissed, and an amended final judgment was entered. On December 18, 1978, a hearing was held on attorneys' fees. After the hearing, which included the introduction of expert testimony by both parties on the reasonable amount of attorneys' fees, the trial court entered a supplemental final judgment awarding appellee attorneys' fees in the amount of $850,000.00. From this supplemental final judgment, appellants appeal.
Appellants' two points on appeal are as follows: (1) the trial court erred in determining the date at which condemnation was imminent; and (2) the award of attorneys' fees was excessive.
In this case, the trial court found that the date of taking, i.e., when condemnation was imminent, was January 18, 1973. In our opinion, the trial court did not commit reversible error by establishing this date as the date when condemnation was imminent. See, e.g., Jacksonville Expressway Authority v. Du Pree Co., 108 So.2d 289 (Fla. 1959); Dade County v. Brigham, 47 So.2d 602 (Fla. 1950); State of Florida, Department of Transportation v. Grice Electronics, 356 So.2d 7 (Fla. 1st DCA 1977); City of Jacksonville v. Schumann, 223 So.2d 749 (Fla. 1st DCA 1969); and State Road Department v. Lewis, 190 So.2d 598 (Fla. 1st DCA 1966).
In regard to appellants' second point on appeal, we note in particular the following: Although this case began its convoluted history in May of 1968 when appellee's permit to dredge and fill was revoked, the compensable period for attorneys' fees extended from January 18, 1973, until the conclusion of this case on July 28, 1978, *584 when appellants herein dismissed their appeal from the final judgment notwithstanding the verdict, i.e., a period of legal effort extending over five years. This compensable period included legal services involving seven different levels, to wit: three trial proceedings in three separate Courts (Leon COunty Circuit Court, United States District Court, and Dade County Circuit Court); and four appellate proceedings in four separate courts (United States Court of Appeals, Fifth Circuit, United States Supreme Court, Florida First District Court of Appeal, and the Florida Supreme Court). In an inverse condemnation proceeding, attorneys' fees must be viewed as entirely contingent until a "taking" is judicially determined. Here, two very experienced and highly regarded attorneys, upon oath and without question as to their expertise, testified as expert witnesses for appellee that, in their opinion, reasonable attorneys' fees were $800,000.00 to $900,000.00. Appellee's counsel testified that the reasonable value of his services were $750,000.00 to $800,000.00. Thus, the award of attorneys' fees in this case was within the range of the expert testimony.
The primary thrust of appellants' contention that the attorneys' fees in this case were excessive is predicated upon a time and hourly rate basis. This approach disregards the factors set forth in Section 73.092, Florida Statutes (1977), to be used in assessing attorneys' fees in eminent domain proceedings. This Section reads as follows:
"In assessing attorney's fees in eminent domain proceedings the court shall consider:
(1) Benefits resulting to the client from the services rendered.
(2) The novelty, difficulty, and importance of the questions involved.
(3) The skill employed by the attorney in conducting the cause.
(4) The amount of money involved.
(5) The responsibility incurred and fulfilled by the attorney.
(6) The attorney's time and labor reasonably required adequately to represent the client.
However, under no circumstances shall the attorney's fees be based solely on a percentage of the award."
Additionally, those factors set forth in Canon 2 of the Code of Professional Responsibility, DR2-106, are to be considered.
In applying the factors set forth in Section 73.092 to the instant case, we note: (1) The benefit to the client in this case was the ultimate recovery of $5,537,308.22. This recovery occurred after receiving a zero offer from appellant over a period of ten years litigation in this matter (including the compensable period for legal services from January 18, 1973). Thus, the benefits to the client were exceptional in terms of dollar amount. (2) The novelty, difficulty, and importance of the questions involved were succinctly stated by the Florida First District Court of Appeal in Askew v. Gables-by-the-Sea, Inc., 333 So.2d 56, 57 (Fla. 1st DCA 1976) as follows:
"This controversy between appellee and the State has suffered an extensive judicial journey. In entering the partial summary judgment in favor of appellee, Gables-By-The-Sea, Inc., the learned trial judge traced the trials and tribulations that appellee has suffered for more than a decade by the actions of the sovereign."
Also see the May 1977 Florida Bar Journal article on Askew v. Gables-by-the-Sea, Inc. analyzing this case's history. Further, the hearing to set a "date of taking," usually a perfunctory matter, was virtually a separate trial. Because of the various dates that could have been set and the vast disparity in market value of the subject property dependent on such date, this hearing was of vital importance and resulted in a date establishing the greatest possible market value for appraisal valuation purposes thus maximizing the award for appellee. (3) The exceptional skill and talent of appellee's counsel is well known in the legal profession. Such ability was recognized as essential to the success of this matter for appellee when a highly regarded expert witness, Leon D. Black, Esq., testified that the "skill required" in this case was "10" on a 1 to 10 scale. Further, the successful *585 post-trial motion for a judgment notwithstanding the verdict represented a complex, dramatic, and unique proceeding in the field of eminent domain litigation. (4) The amount of money involved in this case, $5,537,308.22, is considerable. (5) Also, the responsibility incurred and fulfilled by appellee's counsel is evident from reviewing the record in this cause. (6) In regard to time and labor reasonably incurred, even though appellee's counsel did not maintain time records, the record shows and the expert witness' testimony verifies the substantial time and labor requirements to successfully prosecute this action during a compensable period of over five years. Further, the trial court made the following comments prior to announcing its decision on the amount of attorneys' fees to be awarded herein:
"Before today's hearing this Court has read all the decisions, especially from the Third District, concerning the amount of hourly wages that judges have been awarding in legal fees for domestic relations' cases and eminent domain cases, et cetera. The Florida Bar and the Legislature have set down other criteria besides hours.
The Court recognizes that in this case hours were not specifically kept and the hours that were stated as estimates are estimates. The Court is taking into consideration other criteria that have been set forth by the Florida Bar and by various other cases so that the award that is made is not based on an hourly wage as set.
Considering the testimony of Mr. Black and Mr. Horton and the testimony that was presented by Mr. Pierce that Mr. Ross Stanton would give, the Court is awarding the sum of $850,000 in attorneys' fees."
Further, our review of the record reflects observance of and proper compliance with the requirements of DR2-106, cited above. In conclusion, with the exception discussed below, it is our opinion that a substantial award of attorneys' fees in this case was entirely appropriate and that the supplemental final judgment comported with the applicable principles of law and ethical considerations.
However, our only point of departure from full agreement with the amount of reasonable attorneys' fees set by the trial court relates to that portion of the award which exceeded appellee's counsel's testimony as to the value of the services. Counsel for appellee testified that the value of such services was $750,000.00 to $800,000.00. However, apparently based upon the testimony of appellee's expert witnesses, the trial court set the amount of the award at $850,000.00. Even though this amount was well within the range established by appellee's expert witnesses, we believe that an award in cases such as this, an eminent domain proceeding, should not exceed the valuation placed upon such services by the attorneys who perform the services, i.e. here $800,000.00. Accordingly, the supplemental final judgment appealed is affirmed, except the amount of the attorneys' fees is reversed and the amount awarded therein is reduced to $800,000.00.
Affirmed in part, reversed in part.